HORTON, J., dissenting.
I respectfully dissent because I do not believe that any reader who happened to see the Halls' home wireless internet designation "dennis & wanda irish stocking u2" could reasonably interpret the statement to constitute a statement of fact. In my view, the inclusion of "u2" is of dispositive significance.
I agree with the Court's conclusion that the phrase "dennis & wanda irish stocking" could reasonably be interpreted as an assertion that the Irishes had engaged or were engaging in stalking, which is criminal conduct and could give rise to a claim of defamation per se . However, in my view, the inclusion *985 of "u2" transforms the meaning of the purported assertion to effectively transmit to any reader the message that "Dennis and Wanda Irish are stalking you too."
No viewer of the Halls' home wireless designation could reasonably interpret the assertion that "Dennis and Wanda Irish are stalking you too" as a statement of fact. To do so would require the reader to accept that the message that he or she was the object of criminal activity by the Irishes was intended for him or her alone. Instead, any reasonable reader of the message would understand that this was a statement broadcast to every person who happened to randomly view the Halls' wireless designation and, in the words of the United States Supreme Court, "it is simply impossible to believe" that anyone could accept as factual the assertion that the Irishes were stalking everyone who might happen to view their home wireless designation. In reaching this conclusion, I join the Court in looking to Bresler for guidance. There, the United States Supreme Court concluded:
It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant: it was Bresler's public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense. On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable. Indeed, the record is completely devoid of evidence that anyone in the city of Greenbelt or anywhere else thought Bresler had been charged with a crime.
Greenbelt Co-op. Pub. Ass'n v. Bresler , 398 U.S. 6, 14, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970) (footnote omitted). Likewise, I view the Halls' labeling of their wireless designation as "no more than rhetorical hyperbole." I would therefore affirm the district court's grant of the Halls' motion for directed verdict.
Although I would affirm the decision of the district court, I would affirm the district court's decision not to award attorney fees to the Halls pursuant to Idaho Code section 12-121. As the Court's decision reflects, this appeal was far from frivolous.
Justice BRODY concurs.